# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAULA VAZQUEZ,

                Plaintiff,

    v.

WAL-MART STORES, INC.,

                Defendant.

CIVIL ACTION
No. 09-2609

Pollak, J.                                          August 5, 2010

## OPINION

In this diversity case, plaintiff Paula Vazquez has brought suit against defendant Wal-Mart Stores, Inc., claiming that Wal-Mart's negligence resulted in an injury that she sustained when she slipped on a liquid substance while shopping in one of its stores. Now before the court is Wal-Mart's motion for summary judgment (Doc. No. 20). For the reasons that follow, defendant's motion will be denied.

## I. BACKGROUND

### A. Factual Background

On August 22, 2007, plaintiff Paula Vazquez was injured when she slipped and fell inside defendant Wal-Mart's store in Glenolden, Pennsylvania. Deposition of Paula Vazquez ("Pl.'s Dep.") at 24. As a result of the fall, plaintiff re-injured her left knee. *Id.*

at 31, 33.[1]

Plaintiff had visited the store with her daughter and a neighbor in order to make a return. Dep. at 19-22. Upon entering the store, Plaintiff and her daughter walked towards Customer Service, where plaintiff's daughter stayed to return the merchandise. *Id.* at 22-28. While her daughter waited in line at Customer Service, plaintiff walked through the main alley area in front of the check-out registers. *Id.* As plaintiff was walking away from Customer Service, she received a call from her daughter asking her to bring her identification so that Customer Service could process the return. *Id.* at 23. While walking back to Customer Service through a part of the store she had already traversed, plaintiff slipped on a puddle of liquid in front of the self check-out registers. *Id.* at 22-28. Plaintiff had not previously seen any liquid in that area. *Id.* at 25-26.

Defendant's surveillance system also captured an unsupervised child interacting with an "impulse display"[2] by the self check-out registers shortly before plaintiff's accident. Deposition of Joseph Troy[3] ("Troy Dep.") at 37, 38, 51, 61; Ex. E (Snapshot of Wal-Mart's Video Surveillance Footage). The video recording shows the child taking a

---

[1] Plaintiff's injury required surgery. *See* Ex. L. (Letter from Gwo-Chin Lee, M.D., Assistant Professor of Orthopeadic Surgery at the University of Pennsylvania Health System).

[2] Joseph Troy testified that an "impulse display" is a display that holds merchandise that "could be anything from candy to seasonal merchandise" and is there to attract customers to buy on impulse. *See* Troy Dep. at 35-36.

[3] Joseph Troy was employed at Wal-Mart in Glenolden as an "Asset Protection Associate."

bottle of bubbles from the impulse display, opening the bottle, and pouring its contents onto the floor.  Troy Dep. at 37, 38, 51, 61.  A few seconds after the child spilled the liquid, he slid and danced around in the spill.  *Id.*  The recording shows that two customers then walked through the area of the spill without falling.  *Id.* at 52.  A minute and forty-one seconds after the child spilled the liquid, plaintiff slipped on the liquid and fell. *Id.* at 51-53; Deposition of Troy Maykopet[4] at 32.

Wal-Mart requires all its associates to undergo safety training and pass a safety test.  Troy Dep. at 15.  There is one associate assigned to the self checkout area, where plaintiff fell (Maykopet Dep. at 24).  Self-checkout area associates are charged with the task of making sure that customers scan all their items before leaving, but, like other Wal-Mart associates, also have a duty to clean up spills.  *Id.*  They also have the obligation to correct situations that may potentially be dangerous, including those created by unsupervised children.  *Id.*

Additionally, Wal-Mart employs "asset protection associates," who are in charge of floor surveillance–including shoplifting prevention and ensuring safety.  Troy Dep. at 23.  Even though Wal-Mart maintains a video surveillance system, there is no person assigned to supervise live footage at all times.  Maykopet Dep. at 20-21.  All surveillance is done on the floor, and cameras are only used for research after events have occurred.

---

[4] Joseph Maykopet was employed at Wal-Mart in Glenolden as a "Safety Team Leader" and "Sales Associate."

Troy Dep. at 23.

**B. Procedural Background**

On April 22, 2009, plaintiff sued Wal-Mart for negligence in the Philadelphia County Court of Common Pleas (Doc. No. 1, Ex. A) alleging that defendant breached the duty of care it owed her as a business invitee.  The case was removed to this court on June 10, 2009 (Doc. No. 1).  On April 16, 2010, defendant moved for summary judgment on the ground that plaintiff does not have a viable theory of negligence because the undisputed facts do not establish that Wal-Mart had notice of the danger that caused plaintiff's accident (Doc. No. 20).  Plaintiff responded to defendant's motion on May 7, 2010 (Doc. No. 23) by stating that plaintiff does not need to prove notice because defendant created the danger that caused plaintiff's fall.  Alternatively, plaintiff argues that Wal-Mart did have notice of the danger because (1) the child that spilled the liquid on which plaintiff slipped was exhibiting behavior that should have attracted defendant's attention, (2) the accident occurred near a "spill center,"[5] and (3) defendant's employees were close to the area of the accident.  On May 14, 2010 (Doc. No. 24), defendant filed a reply brief arguing that (1) the undisputed facts do not show notice, (2) defendant's employees were not close to the area when the boy spilled the liquid, and (3) the spill

---

[5] "Spill centers" or "spill stations"are located in "strategic areas" throughout the store and have "wet floor signs, paper towels, a spill absorbent, trash bags, and chemical pillows" that employees can quickly access to clean up spills.  Troy Dep. at 45-46. Strategic areas are areas where spills are expected to occur more often.  *Id.*

station was located fifteen feet from the accident area.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when "its resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Justofin v. Metro. Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In analyzing the evidence, the court "should draw all reasonable inferences against the moving party." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) (citations omitted). However, the non-moving party must "adduce more than a mere scintilla of evidence in its favor," *Anderson*, 477 U.S. at 249 (citations omitted), and cannot "simply reassert factually unsupported allegations contained in its pleadings." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**B. Plaintiff Vazquez's Negligence Claim**

In this diversity action, Vazquez's negligence claims are governed by Pennsylvania

law.[6] Under Pennsylvania law, four elements are needed to establish negligence:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

*Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005). "The standard of

care a possessor of land owes to one who enters upon the land depends upon whether the

person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 469 A.2d 120,

123 (Pa. 1983).

Plaintiff's theory is that Wal-Mart owes her a duty as a business invitee.[7] Compl.,

p. 11. The standard of care towards a business invitee is "the highest duty owed to any

---

[6] Courts sitting in Pennsylvania uniformly apply Pennsylvania law when slip and fall accidents occur in the Commonwealth. *See, e.g., Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (applying Pennsylvania law to a slip and fall case)); *Moultrey v. Great A & P Tea Co.*, 422 A.2d 593 (Pa. Super. 1980) (same).

[7] A business invitee is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Palange v. City of Philadelphia Law Dept.*, 640 A.2d 1305, 1308 (Pa. Super. Ct. 1994); Restatement (Second) of Torts § 332(3) (1965).

entrant upon the land." *Treadway v. Ebert Motor Co.*, 436 A.2d 994, 998 (Pa. Super. Ct.

1981); *see also Glass v. Freeman*, 240 A.2d 825, 829 (Pa. 1968) (explaining the

heightened standard of care owed to business invitees).  Because plaintiff was

defendant's patron at the time of the accident, she was a business invitee.

Plaintiff seeks to recover under the theory of liability created by § 344 of the

Restatement (Second) of Torts.  Section 344 provides:

> A possessor of land who holds it open to the public for entry for his
> business purposes is subject to liability to members of the public
> while they are upon the land for such a purpose, for physical harm
> caused by the accidental, negligent, or intentionally harmful acts of
> third persons or animals, and by the failure of the possessor to
> exercise reasonable care to (a) discover that such acts are being done
> or are likely to be done, or (b) give warning adequate to enable the
> visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344 (1965).  By contrast, defendant argues that §

343 of the Restatement (Second) of Torts is controlling.  Section 343 provides:

> A possessor of land is subject to liability for physical harm caused
> to his invitees by a condition of the land if, but only if, he (a)
> knows or by exercise of reasonable care would discover the
> condition, and should realize that it involves an unreasonable risk
> of harm to such invitees, and (b) should expect that they will not
> discover or realize the danger, or will fail to protect themselves
> against it, and (c) fails to exercise reasonable care to protect them
> against the danger.

Restatement (Second) of Torts § 343 (1965).

As its language makes clear, § 344 applies specifically to business invitees who

suffer harm caused by third persons or the negligence of possessors of land.[8]  As noted

above, plaintiff was a business invitee and it is uncontested that her harm was caused by

a third party.  The facts, however, have also made the application of § 344 dependent on

(1) the "place or character" of the defendant's business or (2) defendant's "past

experience."  *See Valerio v. Keystone Turf Club Inc.*, No. 2823, 1999 WL 1258938, at 2

(Pa. Ct. Comm. Pl., March 17, 1999); Restatement (Second) of Torts § 344 cmt. f

(1965).[9]  In other words, courts examine whether (1) the nature of defendant's business

is such that it is an inherently dangerous place, and (2) the danger that resulted in

plaintiff's injury was consistent with defendant's experience–i.e., had previously

occurred at that business–so that defendant should have foreseen it.

    In *Glass v. Freeman*, 240 A.2d 825, 830 (Pa. 1968), for instance, the

Pennsylvania Supreme Court applied § 344 where, because of the dangerous character of

construction sites, it was foreseeable that an unsupervised child would cause injury.

Likewise, in *Moran v. Valley Forge Drive-in Theater Inc.,* 246 A.2d 875 (Pa. 1968), §

_____

    [8] "Restatement (Second) of Torts § 344 and its comment (f) have long been the law of Pennsylvania." *Donovan v. Strawbridge & Clothier*, 1994 WL 1251144 at 5 (citations omitted).  Section 344 has been applied to warning or prevention of criminal acts as well as that of negligent acts of third parties–including independent contractors and patrons–that a business owner is aware of.  *Id.* at 6 (citations omitted).

    [9] Comment f to § 344 provides that while a possessor of land is not an insurer of his patrons, "[i]f the place or character of his business, or his past experience, is such that he should reasonably anticipate careless . . . conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." Restatement (Second) Torts § 344 cmt. f (1965).

344 applied because the defendants had notice of prior acts potentially harmful to patrons committed by third persons in the area where plaintiff was injured, and in *Murphy v. Penn Fruit Company*, 418 A.2d 480 (Pa. Super. Ct. 1980), the court applied § 344 because the defendant had prior notice of crimes occurring behind its parking lot and failed to protect or warn the plaintiff, who was stabbed there. *Id.* at 480.[10]

As in the above cases, the nature and character of Wal-Mart's business is such that the danger that plaintiff was exposed to is consistent with defendant's experience. In fact, it is uncontested that defendant's placement of a spill station near the site of plaintiff's accident constitutes a signal that Wal-Mart had some expectation that spills might occur in that area of the store. Accordingly, § 344 applies to plaintiff's negligence claim.

To establish liability under § 344, plaintiff must prove that Wal-Mart either (1) helped create the dangerous condition, or (2) had actual or constructive notice of the condition. *Moultrey v. Great Atl. & Pac. Tea Co.*, 422 A.2d 593, 598 (Pa. Super. Ct. 1980). When the danger that caused plaintiff's harm is traceable to the acts of the possessor of land or his agents, the plaintiff does not need to prove that the possessor had notice of such danger. *See Porro v. Century II Assoc.*, 846 A.2d 1282, 1285 (Pa. Super.

---

[10] *See also Smith v. Lit Bros.*, 100 A.2d 390, 392 (Pa. Super. Ct. 1953) (applying Restatement (First) of Torts § 344 (1934) where a department store failed to inspect, discover, and remedy an unsafe procedure by an independent contractor engaged in inherently dangerous demolition work).

Ct. 2004).

Plaintiff argues that Wal-Mart created the harmful condition that resulted in her injury. Wal-Mart did, in fact, design the impulse display to encourage children to pick up merchandise–including the bubble solution on which plaintiff slipped. *See* Troy Dep. at 35-36. A reasonable jury may accordingly find that it was foreseeable that placing liquids in a display that might attract children could result in spills. *Cf. Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. Ct. 1994) (holding that plaintiff presented sufficient evidence–that defendants' negligent use of displays was likely to cause injury of patrons–to avoid non-suit). Even if plaintiff were unable to show that Wal-Mart created the danger that resulted in her injury, summary judgment would remain inappropriate because a genuine issue of material fact exists as to whether Wal-Mart had constructive notice of the relevant danger of a slip and fall in that area. Because the unsupervised child had (1) interacted with the impulse display before picking up the bottle of bubbles (Troy Dep. at 52), and (2) danced and slid around in the spill (Troy Dep. at 38, 61, 62), a reasonable jury may find that defendant had constructive notice of the danger. For the above reasons, plaintiff has established sufficient evidence to send the issue of defendant's liability to a jury.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment will be denied. An appropriate order accompanies this memorandum.